# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

JAMIAN CULPEPPER,                    :

     Plaintiff,                     :

                                        Case No. 3:15cv00097

 vs.                                  :

                                        District Judge Walter H. Rice

CAROLYN W. COLVIN,                   :    Chief Magistrate Judge Sharon L. Ovington
Commissioner of the Social
Security Administration,             :

     Defendant.                     :

---

# REPORT AND RECOMMENDATIONS[1]

---

## I.    <u>Introduction</u>

Plaintiff Jamian Culpepper brings this action under 42 U.S.C. § 405(g) for review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income.  This case is before the Court upon Plaintiff's Statement of Errors (Doc. #10), the Commissioner's Memorandum in Opposition (Doc. #14), Plaintiff's Reply, (Doc. #17), the administrative record (Doc. # 7), and the record as a whole.

Plaintiff seeks an Order remanding this case for an award of benefits.  The Commissioner seeks an Order affirming the Commissioner's final decision.

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

## II.    Procedural History

In 1991, when Plaintiff was 11 years old, the Social Security Administration granted his application for children's Supplemental Security Income due to attention deficit/hyperactivity disorder.  His disability onset date was September 1, 1989.  (Doc. #7, *PageID*# 134).

After Plaintiff turned 18 years old, the Social Security Administration conducted a continuing-disability review.  *See* 20 C.F.R. § 416.987(a).  He remained eligible for benefits at that time due to sickle cell anemia.  (Doc. #7, *PageID*# 134).

In April 2004, when Plaintiff was age 24, the Social Security Administration issued a Notice of Cessation based on its conclusion that Plaintiff was no longer under a disability (as of February 5, 2004).  *Id.*  Plaintiff challenged that decision, but an Administrative Law Judge determined, in April 2006, that his condition had medically improved to the point he was no longer eligible for Supplemental Security Income.[2]  *Id.* at 31, 134-44.

About 4 years passed.  In April 2008, Plaintiff applied for Supplemental Security Income asserting he had been under a disability beginning on April 1, 2008.  He maintained that his disability was due to sickle cell anemia, high blood pressure, diabetes, and a learning disability, and he noted that he tires easily, has frequent sickle-cell crises, (including hospitalizations), and has difficulty walking.  *Id.* at 352.  His application and

---

[2] Plaintiff's eligibility ended effective April 30, 2004 because Plaintiff's disability had "ceased on February 1, 2004."  *Id.* at 143.

evidence proceeded to a hearing before Administrative Law Judge (ALJ) Amelia G.

Lombardo.

In July 2011, ALJ Lombardo issued a decision concluding that Plaintiff was not

eligible for Supplemental Security Income because he was not under a disability.  *Id*. at

150-59.  The Social Security Administration's Appeals Council vacated ALJ Lombardo's

decision on 3 main grounds:

1.   The ALJ's assessment of Plaintiff's residual functional capacity was
inconsistent with the assessment "in a May 13, 2008 decision, and no
explanation is provided to explain the reason for the change...."  *Id*. at 166.

2.   The ALJ failed to evaluate the impact Plaintiff's morbid obesity had on his
residual functional capacity as required by Soc. Sec. R. 02-1p, 2002 WL
34686281 (Sept. 12, 2002).  *Id*.

3.   The ALJ's "decision contains no allocation of weight to medical
opinions...," particularly as to certain psychological findings and reports.
*Id*. at 167.

The Appeals Council instructed the ALJ to obtain additional evidence on remand

and to take many steps, such as "[e]xplain[ing] which findings from the prior decision

remain binding and which do not in accordance with Social Security Acquiescence

Ruling 98-4(6) (*Drummond v. Commissioner of Social Security*[3]).  The Administrative

Law Judge will indicate what new evidence or medical improvement justifies the new

residual functional capacity finding, as required by this Acquiescence Ruling."  *Id*.

(footnote added).

---

[3] *Drummond v. Comm'r of Social Sec.*, 126 F.3d 837 (6th Cir. 1997).

On remand, ALJ Lombardo held another hearing and issued her second decision, in September 2013—the decision at issue in the present case—concluding again that Plaintiff was not eligible for benefits because he was not under a disability (more about this later). *Id.*, *PageID#*s 44-62.

## III. Plaintiff's Vocational Profile and Testimony

Plaintiff was 28 years old and thus a younger person under Social Security Regulations. *See* 20 C.F.R. § 416.963(c). He has a limited education, *see* 20 C.F.R. § 416.964(b)(4), and no past relevant work experience, *see* Doc. #7, PageID#s 60, 326-27. He claimed in his most recent applications for benefits that he was eligible for benefits because he had been under a disability beginning on April 1, 2008.

Plaintiff testified at an administrative hearing in May 2011 that he could no longer work because he suffers from sickle-cell crises, causing his legs, arm, and back to start hurting. He explained, "a lot of times I have to go to the hospital." *Id*. at 102. When asked how frequently the sickle-cell crises occur, he answered: "Well, bad ones, they come and go like every other month or every other week, it depends.... Like little ones, they come like mostly like every week, every other, so it's different ones. It's the real bad ones and the little ones." *Id*. at 104. He described his bad sickle-cell crises as feeling like he has been "hit with a sledge hammer in my arms." *Id.* He responds to the pain in his legs and back by sitting or taking medication. If this does not help, he goes to the hospital. *Id*. at 108.

Plaintiff also has diabetes (type II) and takes a pill to control it. At the time of the

4

ALJ's hearing (May 2011), Plaintiff was approximately 5 feet 8 or 9 inches tall and weighed about 270 pounds.  *Id*. at 98.

Plaintiff's daily activities include helping his mother around the house, watching television, and visiting with friends.  He noted, "usually I'm really into the school because I want to learn."  *Id.* at 105.  He attended a community college with the goal of earning a GED.  *Id*. at 99.  He went to school Monday through Thursday, about 3 to 4 hours a day.  *Id*. at 100.  When he suffers a bad sickle-cell flare-up, he would not go to school or help his mother around the house.  *Id*. at 108.  A smaller flare-up will sometimes prevent him from helping his mother or going to school.   Plaintiff also testified that he has problems catching on—remembering and learning things.  *Id.* at 106.  He has a hard time understanding instructions, and people often have to explain things to him multiple times.  *Id.* at 106-07.

On remand from the Appeals Council, ALJ Lombardo held a hearing (in August 2013).  Plaintiff testified that he was seen in the emergency room probably 4 to 5 times in the past year.  *Id*. at 80.  During his trips to the emergency room, he was treated with IV fluids and pain medications.

Plaintiff testified that the less severe sickle-cell crises were happening more frequently, noting if the pain gets bad he will take a pill and sit or lie down to rest for 30 minutes or so.  *Id.* at 86-87.  He experienced the lesser sickle-cell crises every day, and he always has pain in his legs or his arms.  *Id.* at 87.

## IV.    Medical Opinions

### Giovanni M. Bonds, Ph.D.

Psychologist Dr. Bonds performed a consultative examination at the request of the state agency in January 2004.  *Id*. at 449-54.  Plaintiff reported to Dr. Bonds that he completed the ninth grade before dropping out of school.  He stated that he missed a great deal of school because he was sick.  When he was at school, he did not get along with people.  He earned below average grades in special education classes.

On mental status examination, Dr. Bonds observed that Plaintiff was cooperative. His speech was clear and 100% understandable.  His mood seemed normal and affect was broad and appropriate to thought content.  He did not express marked feelings of sadness, hopelessness, helplessness, worthlessness or guilt.  He recalled eight random digits forward and four in reverse.  Dr. Bonds administered IQ tests and diagnosed Plaintiff with borderline intellectual functioning.

Plaintiff was independent in self-care.  He did not have a driver's license but was able to use public transportation.  He was able to cook and shop.  He helped his mother take care of his adopted brother and his niece, both age 3 at the time.  *Id*. at 449, 451.

Dr. Bonds concluded that Plaintiff had mild limitations understanding, remembering and following directions; no significant limitations maintaining, concentration, persistence or pace; and moderate limitations interacting with others and withstanding the stress and pressure associated with day-to-day work activity.  *Id*. at 454. Dr. Bonds opined that Plaintiff would have difficulty "taking supervision and handling

6

criticism and conflicts with coworkers." *Id*. Dr. Bonds also concluded that because of Plaintiff's low IQ, poor judgment and reasoning abilities and problems with temper control, he would have difficulties handling demands for speed, accuracy, and productivity. *Id*. at 454.

## State Agency Reviews - Mental Impairments

In December 2007, psychologist Dr. Lewin examined the record for the state agency. *Id*. at 507-24. She reported that Plaintiff had the medically determinable impairment of borderline intellectual functioning. *Id*. at 511. Dr. Lewin opined that Plaintiff was mildly restricted in his activities of daily living, moderately limited in maintaining social functioning and in maintaining concentration, persistence or pace, and no episodes of decompensation. *Id*. at 517. Dr. Lewin noted that she adopted the previous mental residual functional capacity in the ALJ decision from September 22, 2005, based, in part, on *Drummond*. *Id*. 521-23.

In June 2008, another psychologist, Dr. Pawlarczyk, reviewed the record for the state agency and also adopted the mental residual functional capacity in the ALJ's decision on September 22, 2005 based "Acquiescence Ruling 98-4 (Drummond. Ruling)." *Id.* at 536. Dr. Pawlarczyk provided no explanation of his application of AR 98-4 or *Drummond* to the evidence of record. *See id*. Additionally, the present administrative record does not appear to contain an ALJ's decision dated September 22, 2005. The decision nearest in time is the ALJ's decision on April 28, 2006, from which there was no appeal. (Doc. #14, *PageID*# 859, n.1; *see* Doc. #7, *PageID*#s 134-44).

7

In January 2009, psychologist Dr. Zwissler wrote briefly, "Initial Psych is affirmed as written, all evidence having been reviewed." *Id*. at 594.  Dr. Zwissler provided no discussion of the evidence or reason for affirming the "Initial Psych[.]" *Id*.

### State Agency Reviews - Physical Impairments

In December 2007, Dr. Green reviewed the record for the state agency and assessed Plaintiff's physical residual functional capacity.  (Doc.# 7, *PageID#*s 525- 32). She adopted the findings of the ALJ decision from September 22, 2005 based, in part, on *Drummond* opinion.  *Id*. at 526.  She noted, "New, objective evidence does not suggest further limitation." *Id*.  She also opined that Plaintiff's allegations were credible, and he remained capable of medium exertion.  *Id.* at 530.

Seven months later, Dr. Hinzman reviewed the record for the state agency.  He recognized that Plaintiff was now alleging hypertension and diabetes in addition to sickle cell anemia.  According to Dr. Hinzman, the evidence documents that Plaintiff was seen for brief hospitalizations in July 2007 and September 2007 for pains related to sickle cell anemia.  He reported that notes from an out-patient visit in October 2007 documented that Plaintiff has uncontrolled diabetes "due to failure to follow prescribed tx [treatment]." *Id*. at 553.

Dr. Hinzman found nothing in Plaintiff's medical records to suggest further limitations.  He adopted the residual functional capacity "dated 9/22/05" under *Drummond*.  *Id*. at 553.  Dr. Hinzman opined that Plaintiff's "allegations appear credible; he remains capable of medium exertion." *Id*. at 557.  In February 2009, Dr. Das wrote,

8

"medical evidence reviewed and initial RFC affirmed." *Id*. at 595.

## V.   The Social Security Act And
   ### ALJ Lombardo's September 2013 Decision

The Social Security Administration provides Supplemental Security Income to

indigent individuals, subject to several eligibility requirements.  Chief among these is the

"disability" requirement.  To receive Supplemental Security Income, an applicant must be

a "disabled individual."  42 U.S.C. §1381a; *see Bowen v. City of New York*, 476 U.S. 467,

470 (1986).  The phrase "disabled individual" – as defined by the Social Security Act –

has specialized meaning of limited scope.  It encompasses only those who suffer from a

medically determinable physical or mental impairment severe enough to prevent them

from engaging in substantial gainful activity.  42 U.S.C. § 1382c(a)(3)(A); *see Bowen*,

476 U.S. at 469-70.

As noted previously, Plaintiff presently challenges the September 2013 decision

ALJ Lombardo issued after remand from the Appeals Council.  (Doc. #7, *PageID#*s

47-62).  She conducted the 5-step sequential evaluation outlined in the Regulations, *see*

20 C.F.R. § 416.920(a)(4), and made the following pertinent findings.

At Step 2, she found that Plaintiff had the severe impairments "Cell Disease;

Borderline Intellectual Functioning; Obesity; Diabetes."  (Doc. #7, *PageID#* 49).

At Step 3, the ALJ considered Plaintiff's impairments under the Commissioner's

Listing of Impairments,[4] specifically Listings 7.00 (hematological disorders); 9.00

---

[4] 20 C.F.R. Part 404, Subpart P, Appendix 1.

(Endocrine Disorders); and 12.05 (Intellectual Disability). *Id.* at 53-54. She concluded that Plaintiff's impairments or combination of impairments did not meet or equal the criteria of an impairment in the Listing. The ALJ recognized at step 3 that obesity is not an impairment separately described in the Listings. She further noted, "given the severity of Plaintiff's obesity, which is classified as morbid and the BMI in excess of 39, it is reasonable to expect that this condition may aggravate the severity of [his] diabetes mellitus." *Id.* at 54.

At Step 4, the ALJ assessed Plaintiff's residual functional capacity or the most he can do in a work setting despite his physical or mental limitations. *See* 20 C.F.R. § 416.945(a); *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). The ALJ concluded that Plaintiff could:

> perform medium work ... except that he is limited to simple repetitive tasks that are considered low stress, i.e., do not involve assembly line production quotas or [f]ast pace with no more than occasional contact with supervisors, co-workers, and the general public and no reading comprehension requirements above the fifth-grade level.

(Doc. #7, *PageID#* 56).

Plaintiff has no past relevant work experience and, consequently, the ALJ continued to step five and concluded that—considering Plaintiff's age, education, work experience, and residual functional capacity—he is capable of performing a significant number of jobs that exist in the regional economy, including dishwasher, laundry laborer, and dining room attendant. *Id.* at 61. This, as noted above, led the ALJ to ultimately find Plaintiff was not under a benefits-qualifying disability.

## VI.  <u>Standard of Review</u>

Judicial review of an ALJ's decision proceeds along two lines: " whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r. of Soc. Sec*., 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec*., 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'"  *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..."  *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.  "(E)ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478

F.3d at 746 and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**VII.** **Discussion**

    **A.** **Medical Source Opinions, AR 98-4(6) and *Drummond***

Plaintiff contends that ALJ Lombardo failed to comply with the Appeals Council's remand order when analyzing the opinion evidence of record. He reasons that the ALJ neglected to provide more than a conclusory mention of the weight assigend to Dr. Bonds's opinions and the opinions of other state-agency medical sources.

The Commissioner maintains that the ALJ complied with the Appeals Council's remand order, properly evaluated the opinion evidence, and properly applied the AR-98-4(6) and the *Drummond* rule.

The ALJ placed significant weight on the opinions provided by Dr. Bonds "and the State Agency medical and psychological consultants ... because they are supported by the medical evidence...." (Doc. #7, *PageID*# 60). The ALJ noted that there are no treating source opinions in the record.

The ALJ's decision fails to demonstrate that she considered the non-treating medical sources' opinions under the correct legal criteria.

Social Security Regulations explain that unless a treating medical source's opinions are given controlling weight, the ALJ will consider at least 3 factors: support-ability, consistency, and specialization. *See* 20 C.F.R. § 416.927(c) (introduction) and § 416.927 (c)(3)-(6). ALJs "must explain the weight given to these opinions in their

decisions." Soc. Sec. R. 96-6p, 1996 WL 374180 at *1 (July 2, 1996). Although the ALJ stated that she was placing "significant weight" on Dr. Bonds' and the state-agency medical sources' opinions, she did so based only on her generalized finding that their opinions were "supported by the medical evidence." (Doc. #7, *PageID*# 60). This falls far short of indicating that the ALJ evaluated these medical sources' opinions under the applicable factors the Regulations require. At best, the ALJ mimicked the word "supportability" in the haze of a general and conclusory reference to the medical evidence without discussing or referring to specific evidence that supports these medical sources' opinions. Additionally, as the ALJ noted, the record did not contain the opinions of a treating medical source. Because of this, the Regulations mandated the ALJ to provide a more meaningful explanation than she did. Again, "[u]nless a treating source's opinion is given controlling weight, the administrative law judge must explain the weigh given to the opinions of a State agency medical or psychological consultant..., as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us." 20 C.F.R. § 404.1527(e)(2)(ii). Any lingering doubt (there is none) about the need imposed by the Regulations for a more meaningful explanation than the ALJ provided is removed by considering the Appeals Council's instruction to the ALJ, which required "*[f]urther evaluation* of these opinions..., along with *an explanation for the weight allocated to each is required*." (Doc. #7, *PageID*# 167) (emphasis added). Because the Appeals Council based this instruction on the Rulings and Regulations cited above, *see id*. (citing 20 C.F.R. §416.927

13

and Social Security Rulings 96-2p and 96-5p), the ALJ erred by not complying with it.

The Commissioner contends that the ALJ's evaluation of the state agency medical sources' opinions was sufficient because she discussed their opinions earlier in her decision and explained why she was adopting their findings.  Yet, a careful reading of the ALJ's decision reveals descriptions of their opinions free of any substantive reasoning for giving them significant weight.  *See* Doc. #7, *PageID*#s 51-52.  Consequently, the Commissioner's reliance on the ALJ's descriptions of these medical opinions is misplaced.

This leads to a problem on the face of the state agency record-reviewers' opinions: They relied on the previous ALJ's decision under AR 98-4(6) and the *Drummond* rule without explanation and with, at best, merely a barebones reference to the evidence.  By doing so, they offered no meaningful insight into their thinking.  Drs. Lewin, Pawlarczyk, and Zwissler considered Plaintiff's mental work limitations and provided no substantive explanations.  *See* Doc. #7, *PageID* #s at 523, 536, 594.  They, moreover, relied on the findings of "the ALJ's decision dated 9/22/05," *id.* at 523, 536, when the present administrative record (the one considered by ALJ Lombardo) does not appear to contain an ALJ's decision dated September 22, 2005.  Although they might have been referring to the ALJ's decision in April 2006, the confusion over this does not inspire confidence in these medical sources' reviews of the record.  As to the opinions of Drs. Hinzman and Das, who reviewed the record and assessed Plaintiff's physical impairments, their opinions also suffer from a lack of any supporting explanation.

14

This leads to Plaintiff's contention that ALJ Lombardo's assessment of the evidence under AR 98-4(6) and *Drummond* is unsustainable.  Plaintiff correctly points out that ALJ Lombardo did not actually inform the reader upon what basis she has concluded that there has been no material change in Plaintiff's condition since the prior ALJ's decision.  *See* Doc. #7, *PageID*# 57.  Plaintiff also correctly observes that ALJ Lombardo could not have made a reasonable determination regarding whether or not there were changes in Plaintiff's condition without first reviewing the evidence contemplated by the prior ALJ.  This is particularly true where the prior ALJ's own summation of that evidence indicates that Plaintiff's sickle cell disease was "not severe" and/or was "asymptomatic," *id.* at 137, descriptors not reasonably applicable to the present evidence.  ALJ Lombardo, however, concluded that Plaintiff's sickle cell disease constituted a severe impairment at step 2 of her evaluation.  This suggests, at a minimum, that ALJ Lombardo thought Plaintiff's sickle cell anemia caused him more limitations that he had at the time of the previous ALJ's decision.

In an attempt to defend this portion of ALJ Lombardo's analysis, the Commissioner actually highlights the unreasonableness of it.  *See* Doc. #14, *PageID*#s 869-70.  By walking the Court through the evidence reflecting Plaintiff's experience of sickle cell disease, albeit limitedly, the Commissioner actually illustrates that his sickle cell disease is neither non-severe nor asymptomatic and, by extension, that the evidence presently before ALJ Lombardo is materially different than that reviewed by the previous ALJ.  *Id.*

This problem aside, and presuming that ALJ Lombardo rightfully applied *Drummond*, the problem remains that she did not actually adopt the prior ALJ's findings regarding Plaintiff's functional capacity. Rather, she diluted the prior ALJ's conclusions by transforming limitations to "low pressure for production and pace" into a prohibition against "assembly line production quotas or fast pace." (Doc. #7, *PageID*#s 56, 143). The Commissioner argues that this departure was harmless by citing Dr. Bonds 2004 examination report as evidence showing Plaintiff was without significant work pace deficits. Yet, Dr. Bonds specifically opined that Plaintiff "would have difficulties handling demands for speed, accuracy and productivity." *Id*. at 454.

Another aspect of the record that deserves consideration is that the previous ALJ's decision acknowledges that the Social Security Administration found Plaintiff to be disabled by sickle cell disease from 1989 through April 2004. *Id*. at Tr. 134. Benefits were terminated at that point as part of cessation proceedings secondary to evidence that Plaintiff's sickle cell disease had become "asymptomatic" and otherwise "non-severe," in the previous ALJ's view. *Id*. at 137. The previous ALJ's decision then represents not only the proposition that Plaintiff's sickle cell disease was non-disabling while asymptomatic in 2004, but suggests that it may well have become disabling by becoming symptomatic during the ensuing years.

Accordingly, Plaintiff's challenges to the ALJ's review of the medical source opinions and the ALJ's application of AR 98-4(6) and *Drummond* are well taken.

### B.     Evaluation Of Obesity

Plaintiff's Body Mass Index (BMI) falls within the category of morbidly obese.

When examined by the emergency room physicians at Miami Valley Hospital in July

2013, he weighed 260 pounds and was 5 feet 9 inches tall.  (Doc.#7, *PageID#* 799).  In

January 2013, he weighed 272 pounds.  *Id.* at 795.   In July 2011, he weighed 270 pounds.

*Id.* at 698.  Based on these records, Plaintiff's BMI is 39.9, just under Class III obesity

(which begins at 40.0), the most severe category of obesity.  *See Shilo v. Comm'r of Soc.*

*Sec.*, 600 F. App'x 956, 962 (6th Cir. 2015); *see also* Soc. Sec. Ruling 02-01p, 2002 WL

34686281 (Sept. 12, 2002).[5]  Plaintiff argues that the ALJ failed to consider his obesity as

Soc. Sec. R. 02-1p, 2002 WL 34686281 (Sept. 12, 2002) mandates.

Soc. Sec. R. 02-01p explains in part:

> The combined effects of obesity with other impairments may be greater
> than might be expected without obesity.  For example, someone with
> obesity and arthritis affecting a weight-bearing joint may have more pain
> and limitation than might be expected from arthritis alone.

2002 WL 34686281 at *6.

At step 2 of her evaluation, ALJ Lombardo adopted the previous ALJ's finding

that Plaintiff's diabetes and obesity are severe impairments at step 2.  (Doc. #7, *PageID#*

53).  She then relied on the conclusion that because "there has been no change in these

medical conditions ...," *id.*, "no further discussion of the claimant's obesity appears

necessary."  *Id.*  Although ALJ Lombardo referred to Plaintiff's diabetes at steps 3 and 4

---

[5] *See generally,* http://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmi_dis.htm

of her evaluation, she did so by way of conclusion rather than explanation.  Her decision essentially offers no clues as to how she reached her conclusions about Plaintiff's obesity at either step 3 or 4.  This constituted error.  *See Shilo,* 600 F. App'x at 962 -64.

The Commissioner contends otherwise based on the ALJ's statement that the condition was "inherent" in the opinions provided by the state agency medical sources. The Commissioner reasons that given her reliance on these opinions, the ALJ incorporated by reference their consideration of Plaintiff's obesity.  This reasoning fails due to the problems discussed above with the ALJ's inadequate explanation of why she placed significant weight on the state agency medical sources' opinions.  Because of this, any "inherent" assessment these medical sources might have included concerning Plaintiff's obesity cannot reasonably operate to forgive the ALJ's inadequate consideration of the combined effects of Plaintiff's obesity and other impairments at steps 3 and 4.

Defendant quotes parenthetically 2 statements in *Bledsoe v. Barnhart*, 165 F. App'x 408, 412, 2006 WL 229795 at *4(6th Cir. 2006): "First, the ALJ made explicit mention of Bledsoe's obesity in his finding of facts. Second, the ALJ does not need to make specific mention of obesity if he credits an expert's report that considers obesity." (Doc. #14, *PageID* #877).   *Bledsoe*, however, is distinguished from the present case by the problems discussed above with ALJ Lombardo's reliance on the state agency medical sources' opinions.  Additionally, at least two unpublished Sixth Circuit cases, as well as both unpublished and published cases from this district, support Plaintiff's position that greater analysis was required at steps 3 and 4 in this case.  *See Reynolds v.*

18

*Comm'r of Soc. Sec.,* 424 FAppx. 411, 2011 WL 1228165 *4 (6th Cir. April 1,

2011) (agreeing with Third and Fifth Circuits and holding that an ALJ must in fact "give

an explained conclusion" as to why a claimant's impairment does or does not meet a

potentially relevant Listing); *Kennedy v. Astrue*, 247 F.Appx. 761, 768 (6th Cir.

2007) (same); see *also Norman v. Astrue,* 694 F.Supp.2d 738, 741 (N.D. Ohio

2010) (where obesity is severe impairment, ALJ must do more than "mention the fact in

passing."); *Miller v. Comm'r of Soc. Sec*., 181 F. Supp.2d 816, 820 (S.D. Ohio

2001) (directing remand where ALJ's decision contained no discussion at all, and

plaintiff presented "evidence suggesting that he was disabled under Listing §11.03" based

upon objective EEG findings, and testimony concerning the frequency and severity of his

epileptic seizures); *Motley v. Comm'r of Soc. Sec*., Case No. 1:08-cv-418, 2009 WL

959876 (S.D. Ohio April 8, 2009) (remanding based upon failure to discuss evidence in

light of analytical framework of Listing, including effect of obesity).

Accordingly, Plaintiff's contentions regarding the ALJ's assessment of his obesity

and its combined effects with his other impairments are well taken.[6]

## VIII.  **Remand Is Warranted**

Remand is warranted when the ALJ's decision is unsupported by substantial

evidence or when the ALJ failed to follow the Administration's own regulations and that

shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial

---

[6] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of the parties' remaining contentions is unwarranted.

19

right.  *Bowen*, 478 F.3d at 746.  Remand for an ALJ's failure to follow the regulations might arise, for example, when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff's credibility lacking, *Rogers*, 486 F.3d at 249.

Under sentence four of  42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits.  *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994).  The latter is warranted "only where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking."  *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994) (quoting *Faucher v. Sec'y of Health & Humans Servs*., 17 F.3d 171, 176 (6th Cir. 1994).

A remand for an award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of disability is not strong while contrary evidence is weak.  *See Faucher*, 17 F.3d at 176.  Yet, Plaintiff is entitled to an Order remanding this matter to the Social Security Administration pursuant to sentence four of §405(g) due to problems set forth above.  On remand the ALJ should

20

be directed to review Plaintiff's disability claim to determine anew whether he was under

a benefits-qualifying disability under the applicable five-step sequential evaluation

procedure, including, at a minimum, a re-assessment of his residual functional capacity

and a re-consideration of the evidence at steps four and five of the sequential evaluation.

## IT IS THEREFORE RECOMMENDED THAT:

1.   The Commissioner's non-disability finding be vacated;

2.   No finding be made as to whether Plaintiff Jamian Culpepper was under a "disability" within the meaning of the Social Security Act;

3.   This case be remanded to the Commissioner and the Administrative Law Judge under sentence four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4.   The case be terminated on the docket of this Court.


July 29, 2016                                          s/Sharon L. Ovington
                                               Sharon L. Ovington
                                      Chief United States Magistrate Judge

21

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen (17) days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).